UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEWIS WAYNE EAGAL,

    Plaintiff                         Civil Action No. 17-13389

v.                                   HON. MATTHEW F. LEITMAN
                                       U.S. District Judge
                                       HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL      U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Lewis Wayne Eagal ("Plaintiff") brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner ("Defendant") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #17] and that Plaintiff's Motion for Summary Judgment [Docket #13] be DENIED.

## PROCEDURAL HISTORY

On March 12, 2015, Plaintiff filed an application for SSI, alleging a disability onset date of August 6, 2000 (Tr. 134-142). After the initial denial of the claim, Plaintiff filed a request for an administrative hearing, held on July 18, 2016 in Livonia, Michigan before Administrative Law Judge ("ALJ") Donald G. D'Amato (Tr. 31, 102). Plaintiff, represented

by Andrea Hamm, testified, as did Vocational Expert ("VE") Zachary A. Matthews (Tr. 34-53, 53-57). On September 13, 2016, ALJ D'Amato found that Plaintiff was not disabled (Tr. 26). On September 7, 2017, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review in this Court on October 17, 2017.

## BACKGROUND FACTS

Plaintiff, born May 24, 1991, was 25 when the ALJ issued his decision (Tr. 26, 134). He finished 11th grade and worked previously as a cook and an assembly line worker (Tr. 156). He alleges disability as a result of chronic back pain, tendinitis, asthma, and high blood pressure (Tr. 155).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

After leaving school, Plaintiff obtained a GED (Tr. 34). He lived in an apartment in Canton, Michigan (Tr. 34). He stood 6' 1" and weighed 359 lbs. (Tr. 35). At the age of nine, he sustained closed head and back injuries in an car accident (Tr 35). After being in a coma for 14 days, he underwent therapy to reacquire motor skills (Tr. 35). He lost both short-term and long-term memory at the time of accident but the short-term memory skills were later restored (Tr. 36). At the time of hearing, he experienced tendinitis of the upper extremities and arthritis of the thoracic spine and hip (Tr. 36).

Plaintiff was unable to lift more than 10 pounds or sit for more than 30 minutes (Tr. 36). He required a chair with good back support (Tr. 37). He was unable to walk significant distances due to lower extremity numbness (Tr. 37). He was usually leaned against something for support while standing (Tr. 38). He was able to get along with others and did not experience any current memory issues (Tr. 38).

In response to questioning by his attorney, Plaintiff reported that he liked to be alone most of the time but did "enjoy the company" of individuals with the same interests (Tr. 39). He had a romantic interest in one individual but was only able to see her "rarely" (Tr. 39). He reported that he enjoyed outside activities but was limited by his financial constraints (Tr. 39). He had undergone training as a chauffeur and taxi driver but could not work in those occupations because was unable to sit for extended periods (Tr. 40). His most comfortable position was sitting in a reclining chair with neck support and his legs elevated (Tr. 40). He took a sleeping agent and was able to sleep between six and seven hours each night (Tr. 41). He did not experience problems taking care of his personal needs, but used a shower chair so he could sit while bathing (Tr. 42).

Plaintiff reported difficulty cooking due to the inability to stand for more than 10 minutes (Tr. 43). He took a break from standing when his back pain became an "eight" on a scale of one to ten (Tr. 44-45). He experienced back pain despite taking Norco (Tr. 44). He usually relied on a friend to cook dinner for him (Tr. 43). He did not treat with a source other than his primary care physician but had been advised to see a pain management specialist (Tr. 45). He was unable to procure stronger pain medicine because his insurance provider would not approve MRI studies documenting a condition warranting the use of opiates (Tr. 46). In addition to Norco, he took a muscle relaxer on an "as needed" basis only, noting that he did like the side effect of "sweats" (Tr. 46). He noted only the "good" side effect from Norco of pain relief (Tr. 47). Excessive pain caused concentrational problems (Tr. 47). He was unable to concentrate for the length of a 30-minute television show due to pain and the need to change positions (Tr. 48).

Plaintiff reported panic attacks when he had "life-changing things . . . going on" such as concern about whether he would be awarded disability benefits (Tr. 48). He reported monthly panic attacks lasting for approximately 30 minutes (Tr. 48). The attacks were characterized by heart palpitations and hyper-alertness (Tr. 49). He coped with the attacks by sitting down and standing against a wall intermittently (Tr. 49). He reported that he did not feel relaxed around other people (Tr. 50). He was able to go out shopping for only limited periods due to back pain (Tr. 51).

### B.    Medical Evidence

#### 1.    Treating Sources

February, 2014 records by Pierre Jean Marie, M.D. note Plaintiff's report of social anxiety for the past four years and recent panic attacks (Tr. 251). April, 2014 records state that Plaintiff was prescribed Zoloft and Xanax for panic attacks (Tr. 250). August, 2014 records note that the conditions of uncontrolled hypertension, nicotine addiction, anxiety/insomnia disorder, chronic back pain, and asthma (Tr. 246). October, 2014 treating records by Dr. Marie note that Plaintiff smoked and was sexually active (Tr. 243). March, 2015 records by Dr. Marie note that Plaintiff was morbidly obese and experienced hypertension, anxiety, and Gastroesophageal reflux disease ("GERD") (Tr. 239-240). Respiratory testing from the following month was unremarkable (Tr. 300). Treating records from the same month note the conditions of Chronic Obstructive Pulmonary Disorder ("COPD"), anxiety, GERD, chronic back pain, and hypertension (Tr. 284). In June, 2015, Plaintiff reported right arm numbness (Tr. 282). January, 2016 records show that his blood pressure was only slightly elevated (Tr. 276).

## 2. Non-Treating Sources

In June, 2015, Jai Prasad, M.D. performed a physical examination, noting Plaintiff's report of a head injury at the age of nine (Tr. 267). Plaintiff reported that due to shortness of breath, he was unable to walk more than two blocks or climb more than one flight of stairs (Tr. 267). He denied vision or hearing problems (Tr. 268). Dr. Prasad noted that Plaintiff was fully oriented and had 98 percent oxygen saturation and a normal gate (Tr. 269). Dr. Prasad noted Plaintiff's report of muscle spasms and stiffness of the spine but no edema (Tr. 269). He found no limitations of the upper extremity (Tr. 270-271).

The same day, psychologist Hugh D. Bray, Ph.D. performed a consultative examination on behalf of the SSA, noting that Plaintiff was able to drive himself to the appointment and provided all of his own information (Tr. 259). Plaintiff reported anxiety for the past four years, hypertension, insomnia, and asthma, stating that he was unable to work due to physical problems (Tr. 259-260). He reported that he quit his job at McDonald's due to "stress" (Tr. 260). He reported fair to poor relationships with family, coworkers, and friends (Tr. 261). Plaintiff noted that he could engage in light housekeeping, prepare simple meals, shop, handle finances, play video games, and make appointments (Tr. 261). He reported that he lived with his mother (Tr. 261). He demonstrated a normal memory and denied hallucinations (Tr. 262). Dr. Bray found a mild neurocognitive disorder with personality change (Tr. 263). He found that Plaintiff's ability to work with supervisors and fellow workers would be moderately impaired (Tr. 263). He found that Plaintiff could perform simple repetitive tasks but that his ability to withstand stress was "moderately to significantly" impaired (Tr. 263). Dr. Bray noted that Plaintiff's medication list included prescriptions for hydrocodone and Xanax (Tr. 265).

Later the same month, Rose Moten, Ph.D. performed a non-examining review of Plaintiff's treating and consultative records on behalf of the SSA, finding mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace due to organic, anxiety-related, and personality disorders (Tr. 63-64).

### C. Vocational Expert Testimony

*The ALJ prefaced the vocational testimony by stating that none of Plaintiff's past earnings rose to the level of substantial gainful activity* (Tr. 54). [1] The ALJ then posed the following set of limitations, describing an individual of Plaintiff's age, educational level, and lack of work history:

> [A]ssume an individual . . . who has the following limitations: Requires work that is simple unskilled with - - involving tangible, concrete tasks in a non-fast rate work production environment, defined as involving no conveyor belt or assembly line work. The individual cannot function as a member of a discrete team, and contact with coworkers and supervisors is occasional and largely superficial. Job responsibilities do no include irect interactive conact with the public; and such work environment should be low-stress, defined as having only occasional changes in the work setting. Can lift and/or carry 5 pounds frequently and 10 pounds occasionally; can stand and/or walk with normal breaks for a total of two hours in an eight-hour workday; can do so for 10 to 20 minutes at one time. Can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions no more than two-thirds of an eight-hour workday. Can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching for not more than two-thirds of an eight-hour workday. Needs to avoid hazards in the workplace such as moving machinery and unprotected heights. Job responsibilities do not include handheld vibrating, or power tools. Needs to be restricted to a relatively clean work environment, meaning stable temperatures, stable humidity, and good ventilation that allows the individual to avoid concentrated exposure to dusts, fumes, gases, odors, and other pulmonary irritants. Can perform each of the following postural activities occasionally: climbing stairs with handrails, balancing, stooping, crouching, and kneeling; but needs to avoid climbing ladders, scaffolds, and

---

[1] Thus, the ALJ found that Plaintiff did not have "past relevant work" for the purposes of the administrative analysis (Tr. 54).

ropes, and crawling. Are there any jobs in the national economy for such individual? (Tr. 55).

The VE replied that the above-described individual could perform the sedentary, unskilled work of an office clerk (approximately 69,000 positions in the national economy); inspector (28,000); and packer (34,000) (Tr. 55). The VE stated that if hypothetical restrictions were amended to include the need to take unscheduled breaks for up to 10 percent of the workday, the job findings would remain unchanged but the need for breaks for up to 15 percent of the workday would eliminate all competitive employment (Tr. 55-56). The VE stated that more than two workday absences a month would also eliminate all competitive employment (Tr. 56). In response to questioning by Plaintiff's attorney, the VE testified that the need to elevate the legs to hip level while in a sitting position would eliminate all competitive employment (Tr. 31).

### D. The ALJ's Decision

Citing the medical records, ALJ D'Amato determined that Plaintiff experienced the severe impairments of "history of closed head injury and spine and ri[b] trauma secondary to motor vehicle accident in 2000 with residual mild neurocognitive disorder, lumbago, cervicalgia, arthritis, and tendinitis; obesity; anxiety disorder with history of panic attacks; insomnia; [COPD]/asthma; [GERD]; and hypertension" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16).

The ALJ found that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 17). He found that Plaintiff retained the following residual functional capacity ("RFC"):

> [W]ork that is simple and unskilled involving tangible, concrete tasks in a non-fast-rate production environment defined as involving no conveyor belt or assembly line work; cannot function as a member of a discrete team and contact with coworkers and supervisors is largely superficial and occasionally; job responsibilities do not include direct interactive contact with the public; requires a "low stress" environment, defined as having only occasional changes in the work setting; can lift and/or carry 5 pounds frequently and 10 pounds occasionally; can stand and/or walk with normal breaks for a total of 2 hours in an 8-hour workday, but can do so for 10 to 20 minutes at one time; can sit with normal breaks for a total of 6 hours in an 8- hour workday, but can do so for 20 to 30 minutes at one time; can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions for not more than 2/3 of an 8-hour workday; can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching for not more than 2/3 of an 8-hour workday; needs to avoid hazards in the workplace such as moving machinery and unprotected heights; jobs responsibilities do not include the use of handheld vibrating or power tools; needs to be restricted to a "relatively clean" work environment, meaning stable temperature, stable humidity, and good ventilation that allows him to avoid concentrated exposure to dust, fumes, gases, odors, and other pulmonary irritants; can occasionally climb stairs with handrails, balance, stoop, crouch, and kneel, but needs to avoid climbing ladders, scaffolds, and ropes, and crawling; and requires work that, in addition to any regularly scheduled breaks, allows the claimant to be off task up to 10% of the workday due to the symptoms of his impairments.
> (Tr. 18-19).

Citing the VE's job findings, the ALJ found that Plaintiff could work as an office clerk, inspector, or packer (Tr. 26, 55).

The ALJ discounted the allegations of disability. He noted that Plaintiff did not receive treatment from anyone but a family doctor (Tr. 20). The ALJ cited Dr. Prasad's finding that Plaintiff had normal oxygen saturation and only slightly elevated blood pressure (Tr. 20). He noted that Dr. Prasad found only a mildly reduced range of spinal motion, intact grip strength, and the ability to perform a wide range of fine manipulative activity (Tr. 20). The ALJ also cited Dr. Bray's consultative psychological findings which included full orientation, average concentration, and the ability to perform simple calculations (Tr. 21).

As to the treating records, the ALJ noted that the imaging studies showed "no active lung lesions" (Tr. 21). He noted that Plaintiff had not required hospitalizations, emergency room treatment, physical therapy, or steroid injections (Tr. 22). The ALJ cited Plaintiff's acknowledgment that he was able to prepare simple meals, take care of his personal needs, shop, drive, make appointments, and handle his finances without help (Tr. 22).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

**FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

**ANALYSIS**

**A. The Consultative Sources**

In his first argument, Plaintiff takes issue with the RFC allowing for occasional squatting, noting that consultative examiner noted an inability to squat. *Plaintiff's Brief,* 10-12 (*citing* Tr. 24, 271), *Docket #13,* Pg ID 368. Plaintiff also faults the ALJ for discounting Dr. Bray's finding that of "moderate to significant impairment" in withstanding stress and moderate impairment in relating to others. *Id.* at 12-13 (*citing* Tr. 24, 263). Plaintiff disputes the ALJ's rationale for rejecting a portion of the consultative findings, arguing that the ALJ

ought to have recontacted the consultative sources for clarification instead of "conjectur[ing] as to why" they made certain findings. *Id.* at 12.

Plaintiff is correct that "after weighing the evidence," the ALJ may seek "additional evidence or clarification" if s/he "cannot reach a conclusion about whether" the claimant is disabled. 20 C.F.R. § 404.1520b(c)(1). However, recontacting a medical source is appropriate "only if the evidence received from that source is inadequate for a disability determination," *DeBoard v. CSS*, 2006 WL 3690637, *5 (6th Cir. December 15, 2006). "Absent a gap in the record, the ALJ has no duty to recontact the physician." *Starkey v. CSS*, 2008 WL 828861, *4 (W.D. Mich. March 26, 2008)(*citing Johnson v. Barnhart*, 138 Fed. Appx. 186, 189, 2005 WL 1414406, *3 (11th Cir. June 17, 2005)). Moreover, the regulations pertaining to the recontacting of medical sources was revised effective March 26, 2012, clarifying that the decision to recontact a source is within the discretion of the ALJ. 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1)(ALJ "may choose not to seek additional evidence or clarification from a medical source" where contacting the source would be not be expected to aid in determining whether the claimant is disabled).

The ALJ did not err by either declining to recontact either of the consultative sources. Although Plaintiff attempts to reframe his argument as a "failure to recontact" claim, he appears instead to take issue with the ALJ's well supported partial rejection of the consultative findings. As a threshold matter, the findings of Drs. Prasad and Bray were not entitled to controlling weight. *Gayheart v. Commissioner of Social Sec.,* 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. 1527(c)(1-2). Rather, as one-time examining sources, their opinions were "entitled to no special degree of deference." *Barker v. Shalala*, 40 F.3d 789,

-11-

794 (6th Cir. 1994)(*citing Atterberry v. HHS*, 871 F.2d 567, 572 (6th Cir. 1989)).

### 1. Dr. Prasad

The ALJ acknowledged Dr. Prasad's finding that Plaintiff was unable to squat (Tr. 24). However, the ALJ noted that the other evidence did not support inability to squat, pointing out that the treating records did not contain complaints of knee pain or imaging studies showing limitations resulting from a knee condition (Tr. 24). He cited observations of a normal gait (Tr. 23-24). The ALJ also noted that Dr. Prasad's finding of a reduced range of knee motion "presumably lead him to conclude" that Plaintiff was incapable of all squatting (Tr. 24). Given that none of the other record evidence contained reference to a knee problem, the ALJ concluded that Plaintiff could perform occasional squatting (Tr. 24).

Plaintiff faults the ALJ for assuming that Dr. Prasad did not actually witness the inability to squat. However, the ALJ's assumption that Plaintiff declined to attempt a squat after alleging motion limitations of the knee does not invalidate the his rejection of Dr. Prasad's "no squat" finding. Even assuming that Plaintiff actually attempted but failed to squat, the ALJ accurately noted that the remainder of the record did not support a total preclusion on squatting (Tr. 24). The ALJ observed that Dr. Prasad's findings reflected a one-time examination rather that an ongoing treating relationship (Tr. 24). Again, the ALJ observed that the treating records did not include imaging studies showing a knee or clinical complaints of knee pain (Tr. 23-24). He noted that Plaintiff exhibited a wholly normal gait (Tr. 24). Because substantial evidence supports the finding that Plaintiff was capable of at least occasional squatting, the inability to squat during a one-time examination (if true) did not oblige the ALJ to recontact Dr. Prasad.

Further, assuming at worst that Plaintiff was unable to perform any squatting whatsoever, the *Dictionary of Occupational Titles* ("*DOT*") states that none of the job findings by the VE (office clerk, inspector, packer) require *any* postural activity (climbing, balancing, stooping, kneeling, crouching, crawling).[2] *Defendant's Brief,* 16, *Docket #17,* Pg ID 394 (*citing DOT* No. 249.587-018, 1991 WL 672349; DOT No. 559.687-034, 1991 WL 683787; DOT No. 529.687-138, 1991 WL 674769). As such, if Dr. Prasad, upon being recontacted, were to state unequivocally that Plaintiff could not perform any squatting, and the RFC were changed to preclude all squatting, the Step Five determination would remain unchanged.

### 2. Dr. Bray

In regard to the consultative psychological examination, the ALJ accorded only "modest weight" to Dr. Bray's finding of "moderate to significant" impairment in withstanding the pressures of everyday work activity (Tr. 24). The ALJ noted that contrary to Dr. Bray's finding of possibly significant impairment in dealing with stress, Plaintiff had not sought therapy or mental health treatment and that his claims of significant impairments in handling stress were supported only by his "subjective complaints" (Tr. 25). The ALJ

---

[2] The Sixth Circuit has noted that in the context of a Social Security Disability claim, squatting and crouching are synonymous. *Doornbos v. Commissioner of Social Security*, 2017 WL 8948744, at *4 (6th Cir. December 13, 2017); *Kerns v. Commissioner of Social Security*, 2017 WL 1324609, at *4 (S.D.Ohio April 11, 2017)("Courts have concluded that the terms 'crouch' and 'squat' are synonymous").

noted that Plaintiff was able to engage in a wide variety of regular activities requiring him to interact with others (Tr. 22). The ALJ also noted that the RFC accounted for the allegations of anxiety and stress by limiting Plaintiff to work that was simple, unskilled, involving only concrete tasks, no conveyor belt or assembly line work; a preclusion on team work; limited contact with coworkers and supervisors; no interaction with the public; and a low stress work environment (Tr. 18, 25). In support of the claim that the ALJ was required to recontact Dr. Bray, Plaintiff cites Dr. Bray's observation of "slowed motor activity" "intermittent eye contact," and an apathetic mood (Tr. 262-263). However, Plaintiff does not explain how recontacting Dr. Bray would "clarify" the consultative findings. While Plaintiff takes issue with the ALJ's rejection of a portion of Dr. Bray's findings, it cannot be concluded that the findings were ambiguous and therefore needing clarification.

Accordingly, the Court should reject Plaintiff's argument that the ALJ was required to recontact the consultative sources for clarification of their findings.

### B. The Mental RFC (Plaintiff's Second and Third Arguments)

In Plaintiff's second and third arguments, he disputes both the rationale and substance of the mental RFC found in the administrative opinion.[3] *Plaintiff's Brief* at 13-15, 15-17.

An RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security*, 276 F.3d 235, 239 (6th Cir. 2002). The "RFC is to be an 'assessment of [a claimant's] remaining capacity for work' once her limitations have been taken into account"

---

[3]The Court will consider the whether the limitations found in the RFC adequately account for the psychological limitations (Plaintiff's third argument) before considering whether the ALJ provided an adequate rationale for RFC (second argument).

*Id.* (citing 20 C.F.R. § 416.945). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. § § 404.1545(a)(1); 416.945 (RFC must be based on all "relevant evidence"). The RFC must consider the alleged physical, mental, and environmental restrictions.§§ 404.1545(b-d);416.945. The ALJ must consider how the psychological limitations effect the ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6 (June 2, 1996). An ALJ is permitted to draw from multiple medical sources in whole or part in crafting the RFC. *Rudd v. CSS*, 531 F. App'x 719, 728 (6th Cir. September 5, 2013); SSR 96-8p at *2.

As an initial matter, the RFC setting forth Plaintiff's work-related limitations is long, detailed, well supported and well explained. Consistent with the requirements of SSR 96-8p, the RFC accounts for limitations in the ability to "understand, carry out, and remember instructions" by limiting Plaintiff to "simple and unskilled [work] involving tangible, concrete tasks" (Tr. 18). In regard to the ability to interact appropriately with supervisors, coworkers, and the public, the RFC precludes work "as a member of a discrete team," limits contact with supervisors and coworkers to "superficial," and precludes "direct interactive contact with the public" (Tr. 18). In reference to the ability to "deal with changes in a routine work setting," the RFC limits him to a "'low stress' environment" with "only occasional changes in the work setting" (Tr. 18). While the RFC does not reference limitations in judgment, the ALJ noted elsewhere that Plaintiff did not exhibit significant

problems in judgment and that he was capable of handling his own finances, driving, shopping, and performing outside activities independently (Tr. 21-22). The findings by both Dr. Bray and non-examining source Dr. Moten also support the finding that Plaintiff did not experience meaningful problems in judgment (Tr. 62, 263).

Plaintiff cites Dr. Bray's conclusion that the ability to "withstand stress and pressure associated with day to day work activities is moderately to significantly impaired," contending that the presence of greater than "moderate" limitation points to a disability finding. *Plaintiff's Brief* at 14. This argument fails for multiple reasons. First, while Plaintiff claims that Dr. Bray completed a "mental RFC . . . indicating that [Plaintiff] would not be able to withstand the stress and pressure of the day-to-day work activities." *Plaintiff's Brief* at 15 (*citing* Tr. 263), Dr. Bray's statement cannot be construed to state that Plaintiff was incapable of even a "low stress" occupation. Dr. Moten concluded (based in large part on Dr. Bray's consultative observations) that Plaintiff was capable of "simple work activity" (Tr. 60-63-64). Plaintiff's contention that Dr. Bray found Plaintiff was "unable" to perform any work is wholly unsupported by the record.

Second, as discussed in Section **A.**, the ALJ provided a thorough discussion of his reasons for giving Dr. Bray's findings only limited weight. The ALJ stated that he rejected the finding of "moderate to significant" limitation in handling workplace stress, noting the "significant" finding appeared "to be based primarily" on Plaintiff's "own subjective complaints" (Tr. 25). In support of the rejection of that portion of Dr. Bray's findings, the ALJ noted that Plaintiff had not sought "therapy or other mental health treatment" (Tr. 25). The ALJ observed that while the record supported a finding that Plaintiff experienced some

(lesser) degree of stress and anxiety, the limitation to a low stress, non-assembly line job with only superficial contact with others adequately accounted for the degree of limitation supported by the record as a whole.

Third, while Plaintiff takes issue with the ALJ's finding that Dr. Bray's conclusions were based on the "subjective complaints," the remainder of the transcript does not support the conclusion that Plaintiff experienced more than moderate psychological limitation. *Plaintiff's Brief* at 14 (*citing* Tr. 25). Aside from the evidence discussed above, Plaintiff's own testimony undermines his claims of psychological disability. While Plaintiff testified that he liked to be alone, he did not allege that he was unable to interact with others on a superficial basis (Tr. 39). Plaintiff noted that financial constraints rather than anxiety prevented him from being involved in more outside activities, volunteering that he enjoyed outside activities (Tr. 39). He reported that he was unable to work as a chauffeur or taxi driver, not because of social anxiety, but because he was unable to sit for long periods (Tr. 40). Plaintiff noted that he relied on a friend to prepare meals (Tr. 43). Plaintiff indicated that his panic attacks were situational, stating that he experienced a once-a-month, 30-minute panic attack when "life-changing things [were] going on" such as anxiety as to whether he would receive an award of disability benefits (Tr. 48). Pursuant to the VE's testimony, the need to be off task for 30 minutes once a month would not be work preclusive, even assuming that all of the monthly panic attacks occurred during Plaintiff's working hours (Tr. 56).

The ALJ's well-reasoned decision and thorough analysis of the testimony and medical transcript does not contain grounds for remand. Moreover, the evidence generously supports the non-disability finding. Because the ALJ's determination was well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #17] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #13] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall

address specifically, and in the same order raised, each issue contained within the objections.

Dated: October 31, 2018                s/R. Steven Whalen
                                       R. STEVEN WHALEN
                                       UNITED STATES MAGISTRATE JUDGE

## CERTIFICATE OF SERVICE

I hereby certify on October 31, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on October 31, 2018.

                                       s/Carolyn M. Ciesla
                                       Case Manager for the
                                       Honorable R. Steven Whalen