UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEWIS WAYNE EAGAL,

    Plaintiff,

Case No. 17-cv-13389
Hon. Matthew F. Leitman

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**<u>OPINION AND ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS (ECF #19) TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (ECF #18), (2) ADOPTING RECOMMENDED DISPOSITION OF REPORT AND RECOMMENDATION, (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF #13), (4) AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF #17)</u>**

In this action, Plaintiff Lewis Wayne Eagal challenges the denial of his application for supplemental security income ("SSI"). After the parties filed cross-motions for summary judgment, the assigned Magistrate Judge issued a Report and Recommendation in which he recommended that the Court (1) deny Eagal's motion for summary judgment and (2) grant Defendant Commissioner of Social Security's motion for summary judgment (the "R&R"). (*See* ECF #18.) Eagal filed timely objections to the R&R (the "Objections"). (*See* ECF #19.) The Court has conducted a *de novo* review of the portions of the R&R to which Eagal has objected. For the

1

reasons stated below, the Court **OVERRULES** the Objections, **ADOPTS** the recommended disposition of the R&R, **GRANTS** the Commissioner's motion for summary judgment, and **DENIES** Eagal's motion for summary judgment.

# I

## A[1]

On March 12, 2015, Eagal filed his application for SSI (the "Application"). (*See* Admin. R., ECF #9-5 at Pg. ID 176-84.) In the Application, Eagal alleged that he became disabled on August 6, 2000. (*See id.*) Eagal has limited previous work experience as a cook and as an assembly line worker. (*See id.* at 9-6, Pg. ID 199.) Eagal claims he is unable to work now due to chronic back pain, tendonitis, asthma, and high blood pressure. (*See id.* at Pg. ID 198.)

## B

Eagal submitted notes from his treating physician, Dr. Pierre Jean Marie of the Garden City Medical Center. (*See* Admin R., ECF #9-7 at Pg. ID 281-301, 319-47.) The notes reflect that Dr. Marie prescribed Eagal with Zoloft and Xanax for panic attacks. (*Id.* at Pg. ID 295.) Other treatment notes reflect diagnoses of chronic back pain, hypertension, nicotine addiction, anxiety disorder/insomnia, asthma,

---

[1] The Court recites only the facts relevant to the Objections. A full description of the facts is available in the R&R.

morbid obesity, Gastroesophageal reflux disease, and Chronic Obstructive Pulmonary Disorder. (*Id.* at Pg. ID 283-84, 290, 328.)

In June of 2015, Eagal was examined by two non-treating professionals: Dr. Jai Prasad, a physician, conducted a physical examination and Hugh D. Bray, Ph.D., a psychologist, conducted a mental status examination. Dr. Prasad found Eagal had lower back pain but had "no evidence of neurological deficits in the lower extremities" and had a "normal gait." (*Id.* at Pg. ID 314.) He also found Eagal's asthma to be "mostly under control." (*Id.*) Moreover, Dr. Prasad determined that Eagal was "massively, morbidly obese" and "needed a strategy to deal with his obesity." (*Id.* at Pg. ID 313-14.) Finally, Dr. Prasad observed that Eagal needed a psychiatric consult to address his anxiety and depression issues. (*Id*. at 314.)

Dr. Bray concluded that Eagal had a mild neurocognitive disorder and personality change. (*Id.* at Pg. ID 307.) Dr. Bray determined that Eagal was "moderately impaired" with respect to his ability to relate to others (including co-workers), his ability to understand and carry out tasks, and his ability to maintain attention, concentration, persistence, pace. (*Id*.) Dr. Bray determined that Eagal was "moderately to significantly impaired" in his mental ability to withstand stress and pressure associated with daily work activities. (*Id*.)

Later in June 2015, another non-treating physician, Dr. Rose Moten, reviewed Eagal's records. She found that while Eagal's "condition results in some limitations

3

in [his] ability to perform work related activities," it also "is not severe enough to keep [him] from working." (Admin. R., ECF #9-3 at Pg. ID 110.)

### C

The Social Security Administration (the "SSA") denied Eagal's Application because it found that Eagal was not disabled. (*See id.*, ECF #9-4 at Pg. ID 113-16.) Eagal thereafter requested and received a *de novo* hearing before administrative law judge Donald G. D'Amato (the "ALJ"). The ALJ held that hearing on July 18, 2016. (*See id.*, ECF #9-2 at Pg. ID 70.) Eagal and an impartial vocational expert ("VE"), Zachary A. Matthews, testified at the hearing. (*See id.* at Pg. ID 71.)

Eagal testified that, at the age of nine, he sustained a "closed head injury" in a car accident and suffered residual back pain. (*See* Admin. R., ECF #9-2 at Pg. ID 74.) He was in a coma for fourteen days after the car accident. (*Id.*) Due to ongoing pain and discomfort, he could not lift more than 10 pounds and he could not sit longer than half an hour. (*Id.* at 75.) He told the ALJ that he spends most of his time in a special chair that reclines and has additional support for his neck. (*Id.* at 79-80.) He also reported having panic attacks when he experiences something "life-changing." (*Id.* at 88.) The panic attacks occur "at least once a month" and last "30 minutes." (*Id.*)

Prior to hearing testimony from the VE, the ALJ clarified that he found Eagal had no past relevant work experience. (*See* Admin. R., ECF #9-2 at Pg. ID 93.) The ALJ then posed the following hypothetical to the VE:

> Assume an individual . . . who has the following limitations: requires work that is simple unskilled with, with - - involving tangible, concrete tasks in a non-fast rate work production environment, defined as involving no conveyor belt or assembly line work. The individual cannot function as a member of a discrete team, and contact with coworkers and supervisors is occasional and largely superficial. Job responsibilities do not include direct interactive contact with the public; and such work environment should be low-stress, defined as having only occasional changes in the work setting.
>
> Can lift and/or carry 5 pounds frequently and 10 pounds occasionally; can stand and/or walk with normal breaks for a total of two hours in an eight-hour workday; can do so for 10 to 20 minutes at one time. Can sit with normal breaks for a total of six hours in an eight-hour workday; can do so for 20 to 30 minutes at one time. Can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions not more than two-thirds of an eight-hour workday. Can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching for not more than two-thirds of an eight-hour workday. Needs to avoid hazards in the workplace such as moving machinery and unprotected heights.
>
> Job responsibilities do not include handheld vibrating, or power tools. Needs to be restricted to a relatively clean work environment, meaning stable temperatures, stable humidity, and good ventilation that allows the individual to avoid concentrated exposure to dusts, fumes, gases, odors, and other pulmonary irritants. Can perform each of the following postural activities occasionally: climbing stairs with handrails, balancing, stooping, crouching, and kneeling; but needs to avoid climbing ladders, scaffolds, and ropes, and crawling. Are there any jobs in the national economy for such individual?

(*Id.* at Pg. ID 93-4.) The VE responded that there are jobs for a person with this functional capacity, including the jobs of office clerk, inspector, and packer. (*Id.* at Pg. ID 94.) In response to questioning from the ALJ, the VE also confirmed that these same jobs would be available for a person with the limitations stated in the hypothetical who also needed to take breaks for as much as ten percent of the workday. (*Id.*) However, the VE reported that there would be no employment prospects for a person with these limitations who needed to take breaks for up to fifteen percent of the workday or to be absent twice each month. (*Id.* at Pg. ID 95.)

## D

On September 13, 2016, the ALJ issued a written decision in which he affirmed the SSA's denial of benefits. (*See* Admin. R., ECF #9-2 at Pg. ID 50-65.) The ALJ found that Eagal suffered from the following severe impairments: "history of closed head injury and spine and rim trauma secondary to motor vehicle accident in 2000 with residual mild neurocognitive disorder, lumbago, cervicalgia, arthritis, and tendinitis; obesity; anxiety disorder with history of panic attacks insomnia; chronic obstructive pulmonary disease (COPD)/asthma; gastroesophageal reflux disease; and hypertension." (*Id.* at Pg. ID 55.)

The ALJ determined that Eagal has the following residual functional capacity (RFC):

> [W]ork that is simple and unskilled involving tangible, concrete tasks in a non-fast-rate production environment defined as involving no

conveyor belt or assembly line work; cannot function as a member of a discrete team and contact with coworkers and supervisors is largely superficial and occasionally; job responsibilities do not include direct interactive contact with the public; requires a "low stress" environment, defined as having only occasional changes in the work setting; can lift and/or carry 5 pounds frequently and 10 pounds occasionally; can stand and/or walk with normal breaks for a total of 2 hours in an 8-hour workday, but can do so for 10 to 20 minutes at one time; can sit with normal breaks for a total of 6 hours in an 8- hour workday, but can do so for 20 to 30 minutes at one time; can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions for not more than 2/3 of an 8-hour workday; can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching for not more than 2/3 of an 8-hour workday; needs to avoid hazards in the workplace such as moving machinery and unprotected heights; jobs responsibilities do not include the use of handheld vibrating or power tools; needs to be restricted to a "relatively clean" work environment, meaning stable temperature, stable humidity, and good ventilation that allows him to avoid concentrated exposure to dust, fumes, gases, odors, and other pulmonary irritants; can occasionally climb stairs with handrails, balance, stoop, crouch, and kneel, but needs to avoid climbing ladders, scaffolds, and ropes, and crawling; and requires work that, in addition to any regularly scheduled breaks, allows the claimant to be off task up to 10% of the workday due to the symptoms of his impairments.

(*Id.* at Pg. ID 57-8.)

The ALJ concluded that Eagal was not disabled and that there were jobs that existed in significant numbers in the national economy that Eagal could perform, including the jobs of office clerk, inspector, or packer. (*See id.* at Pg. ID 64-65.) In reaching this conclusion, the ALJ found that, "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that "the claimant's statements concerning the intensity, persistence and limiting effects

7

of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at Pg. ID 59.)  Furthermore, the ALJ concluded that while the "evidence certainly supports a finding that the claimant's combined impairments cause some limitations in his ability to perform work-related activities… the evidence as a whole does not compel a finding that he is incapable of performing even simple, low-stress work with limited social demands at the sedentary level." (*Id*. at Pg. ID 60.)

**B**

On October 17, 2017, Eagal filed this action in which he challenges the SSA's denial of benefits. (*See* Compl., ECF #1.)  Eagal and the Commissioner then filed cross-motions for summary judgment. (*See* Eagal's Mot. Summ. J., ECF #13; Commissioner's Mot. Summ. J., ECF #17.)

The Court referred the cross-motions to the assigned Magistrate Judge.  On October 31, 2018, the Magistrate Judge issued the R&R in which he recommended that the Court deny Eagal's motion and grant the Commissioner's motion. (*See* R&R, ECF #18.)  The Magistrate Judge ultimately concluded that the "ALJ's well-reasoned decision and thorough analysis of the testimony and medical transcript does not contain grounds for remand." (*Id.* at Pg. ID 421.)  Furthermore, the Magistrate Judge found "the evidence generously supports the non-disability finding." (*Id.*)

On November 14, 2018, Eagal filed the Objections. (*See* ECF #19.) Eagal first asserts that the Magistrate Judge "erred when he found that ALJ's decision was supported by substantial evidence." (*Id.* at Pg. ID 425.) Eagal next argues that the Magistrate Judge "erred in finding that the ALJ's Mental RFC was sufficient." (*Id.*) Eagal asks the Court to remand this action "for a proper evaluation of the medical records and testimony of the Plaintiff." (*Id.* at Pg. ID 430.)

## II

### A

Where a party objects to a portion of a Magistrate Judge's R&R, the Court reviews that portion *de novo*. *See* Fed. R. Civ. P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp. 2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the R&R to which a party has not objected. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

### B

In reviewing the disputed findings of an ALJ, the Court is limited to determining whether those findings are supported by substantial evidence and are made pursuant to proper legal standards. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). "[A] court is obligated to remand for further administrative proceedings if there are any unresolved essential factual issues." *Meehleder v. Comm'r of Soc. Sec.*, 2012 WL 3154968, at *2 (E.D. Mich. Aug. 2, 2012) (citing *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994)).

### III

### A

In Eagal's first objection, he argues that the "Magistrate erred when he found that ALJ's decision was supported by substantial evidence." (*See* Objections, ECF #19 at Pg. ID 425.) But in this objection Eagal does not identify, or cite to, any specific portion of the R&R or any particular finding of the Magistrate Judge with which he disagrees. Instead, he appears to object to the R&R *in toto*. (*See id.* at Pg. ID 428 ("Overall, Plaintiff's ability to work during the time period at issue was severely over-estimated by the ALJ, and incorrectly affirmed by the Magistrate."))

This general objection is insufficient. As the Sixth Circuit has explained:

> A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.

*Howard v. Sec. of Health and Human Svs.*, 932 F.2d 505, 509 (6th Cir. 1991). Eagal's general objection, if allowed, would lead to the precise type of "duplication of time and effort" that the Sixth Circuit warned against in *Howard*. Accordingly, Eagal is not entitled to relief based upon his first objection.

Even if the Court were to reach the merits of the first objection, it would not grant relief based upon that objection. In that objection, Eagal cites only his own testimony in support of his contention that he is disabled. (*See* Objections, ECF #19 at Pg. ID 427.) He does not cite any medical records that support his claimed disability, nor does he attempt to show how the Magistrate Judge or ALJ misinterpreted the medical records they found insufficient to support his claimed disability. (*See id*.) Likewise, Eagal does not attempt to show any error in the ALJ's decision to discount his testimony, in part, because his testimony was not always supported by the medical records. (*See, e.g.*, ALJ Decision, Admin. R., ECF #9-2 at Pg. ID 60 ("With regards to his complaints of physical plain, the record does not contain any imaging studies showing abnormalities or the spine and x-rays of the right shoulder and forearm were negative.").) Under these circumstances, Eagal has failed to show that the ALJ's decision was not supported by substantial evidence.

**B**

Eagel's second objection is that the "Magistrate erred in finding that the ALJ's Mental RFC was sufficient." (Objections, ECF #19 at Pg. ID 428.) Eagal asserts
11

that the RFC "has so many limitations" that it "would be nearly impossible to find an employer to accommodate them, despite the ALJ's contention that significant jobs would be available to him." (*Id.*) However, the VE opined that there *would* be jobs available to Eagal, even with the limitations set forth in the RFC. (*See* Admin. R., ECF #9-2 at Pg. ID 94.) Eagal has not identified any evidence that undermines the VE's conclusion, nor has he shown how the ALJ erred in relying upon the VE's opinion.

Eagal also argues that the RFC "does not go far enough" to account for his panic attacks. (*See* Objections, ECF #19 at Pg. ID 428-29.) He says he has a "long history" of panic attacks that makes it difficult for him to interact with others. However, with respect to his panic attacks, he testified only that they occur roughly one time per month and that they last for about thirty minutes. (*See* Admin. R., ECF #9-2 at Pg. ID 87.) Eagal has not shown that his panic attacks required more than the low-stress limitation that the ALJ included in the RFC.

Finally, Eagal objects to the Magistrate Judge's determination that the ALJ properly discounted some of the mental limitations identified by Dr. Bray. Eagal has failed to show that this discounting was unreasonable. The Court shares the Magistrate Judge's view that, at least to some material extent, Eagal's "own testimony undermines his claims of psychological disability." (*See* R&R, ECF #18 at Pg. ID 420 (explaining why Eagal's testimony was, at least in part, meaningfully

inconsistent with his claimed mental health limitations). The ALJ carefully explained his reasons for discounting Dr. Bray's limitations (s*ee* ALJ Decision, ECF #9-2 at Pg. ID 63-64), and Eagal has not persuaded the Court that the ALJ erred. Accordingly, the Court overrules Eagal's objection to the mental RFC.

IV

For the reasons stated above, **IT IS HEREBY ORDERED** that:

- Eagal's Objections to the R&R (ECF #19) are **OVERRULED**;

- The Magistrate Judge's recommended disposition in the R&R (ECF #18) is **ADOPTED**;

- The Commissioner's Motion for Summary Judgment (ECF #17) is **GRANTED**; and

- Eagal's Motion for Summary Judgment (ECF #13) is **DENIED**.

s/Matthew F. Leitman  
MATTHEW F. LEITMAN  
UNITED STATES DISTRICT JUDGE

Dated: January 8, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 8, 2019, by electronic means and/or ordinary mail.

s/Holly A. Monda  
Case Manager  
(810) 341-9764